UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON E. SANTANA, | Case No. CV 15-4456 JC |
| Plaintiff, | |
| v. | MEMORANDUM OPINION |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

**I.   SUMMARY**

On June 11, 2015, Shannon E. Santana ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits. The parties have consented to proceed before the undersigned United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; June 16, 2015 Case Management Order ¶ 5.

///
///

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED. The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.

## II. PERTINENT BACKGROUND[1]

Plaintiff filed two sets of benefit applications for overlapping disability claims. In November 2008, plaintiff filed applications for Supplemental Security Income and Disability Insurance Benefits ("2008 Applications") which essentially asserted that plaintiff became disabled on May 4, 2004, due to two ruptured discs in her back, anxiety disorder, multiple sclerosis, kidney stones, problems with the right eye, numb fingers on left hand, constant leg cramps at night of both legs, and problems with balance. (Administrative Record ("AR") 108, 111, 141, 464). Plaintiff also filed applications for Supplemental Security Income and Disability Insurance Benefits in July 2010 ("2010 Applications") which asserted, in pertinent part, that plaintiff became disabled on January 2, 2008, due to multiple sclerosis, anxiety disorder, and kidney stones. (AR 464, 837, 844, 877).

The ALJ held a total of three hearings in connection with plaintiff's disability claims, specifically: (1) an April 19, 2010 initial hearing on plaintiff's 2008 Applications ("First Hearing" or "2010 Hearing") (AR 31-67); (2) a March 1, 2012 initial hearing on plaintiff's 2010 Applications ("Second Hearing" or "2012 Hearing") (AR 729-68); and (3) a March 13, 2013 hearing on plaintiff's 2008 Applications after remand from the District Court ("Third Hearing" or "2013 Hearing") (AR 485-530).

On June 21, 2010, the ALJ issued an unfavorable decision on plaintiff's 2008 Applications ("2010 Decision"), finding plaintiff not disabled through the date of the decision. (AR 17-27). On March 28, 2012, the ALJ issued a partially

---

[1]Since the parties are familiar with the factual and procedural history, the Court will discuss such history only as necessary to clarify and afford context to the opinion.

favorable decision on plaintiff's 2010 Applications, finding plaintiff disabled beginning on September 22, 2010 ("2012 Decision"). (AR 562-73).

On April 4, 2012, a previously assigned Magistrate Judge reversed and remanded for further proceedings because the ALJ's credibility determination in the 2010 Decision was not legally sufficient or supported by substantial evidence. (AR 578-87).

On June 23, 2012, the Appeals Council affirmed the 2012 Decision, but vacated the 2010 Decision and remanded the case for further administrative proceedings consistent with the District Court's remand order, with directions that the ALJ "issue a new decision on the issue of disability before September 22, 2010." (AR 594-95 [Affirmation and Order of Appeals Council]).

Currently before the Court and addressed herein are plaintiff's challenges to the ALJ's decision dated June 28, 2013 after the Appeals Council remand ("2013 Decision") in which the ALJ determined that plaintiff was not disabled for the closed period of May 4, 2004 through September 21, 2010 (*i.e.*, the "period at issue"). (AR 464-80). In connection therewith, the ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel) and a vocational expert at the 2013 Hearing. (AR 485-530).

In the 2013 Decision, the ALJ specifically found that during the period at issue: (1) plaintiff suffered from the following severe combination of impairments: multiple sclerosis, history of right tibia and fibula fractures with residual osteoarthritis, parathyroid adenoma, status post parathyroidectomy, obesity, osteoarthritis of the cervical spine, kidney stones, and history of a mood disorder with a more recent diagnosis of depression (AR 467); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 468-70); (3) plaintiff retained the residual functional capacity to perform sedentary work (20 C.F.R. §§ 404.1567(a), 416.967(a)) with

///

3

additional limitations[2] (AR 470); (4) plaintiff could not perform any past relevant work (AR 478); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform, including Touch Up Screener and Table Worker (AR 479); and (6) plaintiff's allegations regarding the intensity, persistence, and limiting effects of her subjective symptoms were not entirely credible (AR 471).

The Appeals Council denied plaintiff's application for review of the 2013 Decision. (AR 448).

## III. APPLICABLE LEGAL STANDARDS

### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

///

---

[2] The ALJ determined that plaintiff: (i) was able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk no more than two hours per eight-hour workday, and sit for no more than six hours per eight-hour workday; (ii) could never climb ladders, ropes, or scaffolds; (iii) could no more than occasionally climb ramps or stairs, or crouch, crawl, kneel, or stoop; (iv) could perform no more than frequent handling and fingering bilaterally; (v) needed to avoid concentrated exposure to unprotected heights and dangerous machinery; (vi) could perform no more than frequent operation of foot controls bilaterally; and (vii) was able to implement and understand simple, routine tasks but could not do detailed or complex work. (AR 470).

4

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

> (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> (2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.
>
> (3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

///

**B.     Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Courts review only the reasons provided in the ALJ's decision, and the decision may not be affirmed on a ground upon which the ALJ did not rely.  See Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision.  Robbins, 466 F.3d at 882 (a court may not substitute its judgment for that of the ALJ) (citing Flaten, 44 F.3d at 1457); see also Molina, 674 F.3d at 1111 ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.") (citation omitted).

Even when an ALJ's decision contains error, it must still be affirmed if the error was harmless.  Treichler v. Commissioner of Social Security Administration, 775 F.3d 1090, 1099 (9th Cir. 2014).  An ALJ's error is harmless if (1) it was inconsequential to the ultimate nondisability determination; or (2) the ALJ's path

may reasonably be discerned, even if the ALJ explains the ALJ's decision with less than ideal clarity. Id. (citation, quotation marks, and internal quotations marks omitted).

## IV. DISCUSSION

Plaintiff contends that a reversal or remand is warranted because (1) the Administrative Record was incomplete; (2) the ALJ failed properly to evaluate the opinions of plaintiff's treating physician; and (3) the ALJ erred in his evaluation of plaintiff's credibility. (Plaintiff's Motion at 3-8). The first ground does not warrant a remand since defendant has lodged a supplemental administrative record which contains, among other things, all of the specific medical records plaintiff originally claimed were missing. In addition, for the reasons discussed in detail below, plaintiff is not entitled to a reversal or remand on the second and third grounds.

### A. The ALJ Properly Evaluated the Opinions of Plaintiff's Treating Physician

#### 1. Pertinent Law

In Social Security cases, courts give varying degrees of deference to medical opinions depending on the type of physician who provided them, namely "treating physicians," "examining physicians," and "nonexamining physicians." Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014) (citation and quotation marks omitted). A treating physician's opinion is generally given the most weight, and may be "controlling" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record[.]" 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Orn, 495 F.3d at 631 (citations and quotation marks omitted). An examining, but non-treating physician's opinion is entitled to less weight than a treating physician's, but more weight than a nonexamining physician's opinion. Garrison, 759 F.3d at 1012 (citation omitted).

A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). An ALJ may reject the uncontroverted opinion of either a treating or examining physician by providing "clear and convincing reasons that are supported by substantial evidence" for doing so. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) (citation omitted). Where a treating or examining physician's opinion is contradicted by another doctor's opinion, an ALJ may reject such opinion only "by providing specific and legitimate reasons that are supported by substantial evidence." Garrison, 759 F.3d at 1012 (citation and footnote omitted).

An ALJ may provide "substantial evidence" for rejecting a medical opinion by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." Garrison, 759 F.3d at 1012 (quoting Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (quotation marks omitted)); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (same) (citations omitted); Magallanes, 881 F.2d at 751, 755 (ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion). An ALJ "must do more than offer [] conclusions." Embrey v. Bowen, 849 F.2d 418, 421 (9th Cir. 1988); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("broad and vague" reasons for rejecting treating physician's opinion insufficient) (citation omitted). "[The ALJ] must set forth his [or her] own interpretations and explain why they, rather than the [physician's], are correct." Embrey, 849 F.2d at 421-22.

### 2. Analysis

In a "Neurology Clinic Record" dated June 25, 2010, plaintiff's treating neurologist, Dr. Elizabeth H. Morrison, diagnosed plaintiff with Multiple Sclerosis and opined, among other things, that "[plaintiff] needs to be on full permanent disability because of her multiple sclerosis" ("Dr. Morrison's Opinion"). (AR

955). Plaintiff claims that a remand for payment of benefits is appropriate because the ALJ failed properly to evaluate the medical evidence provided by Dr. Morrison. (Plaintiff's Motion at 4-5, 8-9). The Court disagrees.

First, the ALJ was entitled to reject Dr. Morrison's conclusory statement that plaintiff "needs to be on full permanent disability[.]" (AR 26, 343, 459); cf. Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must provide explanation only when rejecting "significant probative evidence") (citation and quotation marks omitted). Non-medical, conclusory opinions that a plaintiff is disabled or unable to work are not binding on the Commissioner, and may be rejected outright. See Boardman v. Astrue, 286 Fed. Appx. 397, 399 (9th Cir. 2008) ("[The] determination of a claimant's ultimate disability is reserved to the Commissioner . . . a physician's opinion on the matter is not entitled to special significance."); Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citation omitted); see also 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability. . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."); 20 C.F.R. § 416.927(d)(1) (same).

Second, the ALJ properly gave less weight to Dr. Morrison's Opinion to the extent it was based on plaintiff's subjective complaints (AR 477), which, as noted below, the ALJ properly found not entirely credible. See, e.g., Ghanim v. Colvin, 763 F.3d 1154, 1162 (9th Cir. 2014) (ALJ may discount medical opinion based "to a large extent" on a claimant's "self-reports" that the ALJ found "not credible") (internal quotation marks and citations omitted).

///

9

1    Third, the ALJ properly gave less weight to Dr. Morrison's Opinion because
2 Dr. Morrison had not recommended a follow up appointment for earlier than three
3 months later – which the ALJ reasonably concluded "implie[d] that [plaintiff's]
4 symptoms were not that serious." (AR 477) (citing Exhibit B4F at 3 [AR 956]).
5    Fourth, the ALJ properly gave less weight to Dr. Morrison's Opinion
6 because it was not supported by the physician's own clinical findings at the time.
7 See Connett, 340 F.3d at 875 (treating physician's opinion properly rejected where
8 treating physician's treatment notes "provide no basis for the functional
9 restrictions he opined should be imposed on [the claimant]"). For example, the
10 June 25, 2010 Neurology Clinic Record documented generally unremarkable
11 objective findings from Dr. Morrison's examination of plaintiff except for
12 plaintiff's motor examination which showed some reduced strength in plaintiff's
13 hips, knees, and ankles. (AR 955). Nonetheless, Dr. Morrison did not state that
14 such reduced lower extremity strength produced any specific functional limitations
15 beyond those reflected in the ALJ's residual functional capacity assessment for
16 plaintiff, much less limitations that would support a disability finding for Social
17 Security purposes. (AR 954-56). To the extent plaintiff argues that Dr.
18 Morrison's opinions "that plaintiff was suffering from worsening, disabling MS
19 symptoms earlier than September 22 and dating back to at least earlier that year"
20 were actually supported by evidence of plaintiff's reduced lower extremity
21 strength, Dr. Morrison's treatment of plaintiff with various medications (*i.e.*,
22 "Solu-Medrol," Neurontin, and Vicodin), the results of an MRI of plaintiff's brain
23 "[t]hree months later," and Dr. Morrison's subsequent, retrospective opinion "that
24 plaintiff had been disabled as early as 2008"[3] (Plaintiff's Motion at 5) (citing AR

---

26    [3]In the margin of a February 10, 2012 Multiple Sclerosis Residual Functional Capacity
27 Questionnaire prepared by a different medical provider (AR 732), Dr. Morrison hand wrote an
"Addendum" dated February 29, 2012, which stated "[plaintiff] has been followed at LAC
28 [Multiple Sclerosis] clinic since 2008 and has been disabled since at least then." (AR 1289).

(continued...)

478), the Court will not second guess the ALJ's reasonable determination to the contrary. See Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (not court's role to second-guess ALJ's reasonable interpretation of evidence) (citation omitted).

Finally, the ALJ properly rejected Dr. Morrison's Opinion in favor of the conflicting opinions of the state-agency examining internist, Dr. A. Rahman Khaledy Sultan (who essentially opined that plaintiff could perform work at the medium exertional level) (AR 355-61), the examining neurologist, Dr. Sarah L. Maze (who, the ALJ noted, opined that plaintiff "essentially ha[d] only some postural and environmental restrictions") (AR 476) (citing Exhibit 12F at 5-10 [AR 442-47]), and the state-agency medical consultant, Dr. C. Friedman (who opined that plaintiff was able to perform medium work with frequent postural activities and some environmental limitations) (AR 363-67) – none of whom determined that plaintiff had functional limitations beyond those in the ALJ's residual functional capacity assessment. The opinions of Drs. Sultan and Maze were supported by the respective physicians' independent examinations of plaintiff (AR 356-60 [Dr. Sultan], 439-41 [Dr. Maze]), and thus, without more, constituted substantial evidence upon which the ALJ could properly rely to reject Dr. Morrison's Opinion. See, e.g., Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's opinion on its own constituted substantial evidence, because it rested on physician's independent examination of claimant) (citations omitted). Dr. Friedman's opinions also constituted substantial evidence

---

[3](...continued)
Nonetheless, the ALJ properly rejected Dr. Morrison's conclusory opinion that plaintiff had been "disabled" since 2008. See Thomas, 278 F.3d at 957 (when evaluating conflicting medical opinions, "the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation omitted); see also Boardman, 286 Fed. Appx. at 399 (ALJ need not accept physician's opinion on matter reserved to Commissioner).

supporting the ALJ's decision since they were supported by the other medical evidence in the record as well as Dr. Sultan's opinions and underlying independent examination. See id. (opinions of nontreating or nonexamining doctors may serve as substantial evidence when consistent with independent clinical findings or other evidence in the record); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) ("[R]eports of [a] nonexamining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").

Accordingly, a remand or reversal on this basis is not warranted.

### B. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

When a claimant provides "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged," and there is no affirmative finding of malingering, the ALJ may discount the credibility of the claimant's subjective complaints only by "providing specific, clear and convincing reasons for doing so." Brown-Hunter v. Colvin, 806 F.3d 487, 488-89, 492-93 (9th Cir. 2015) (citation and internal quotation marks omitted). This requirement is very difficult to meet. See Garrison, 759 F.3d at 1015 (citation and internal quotation marks omitted).

An ALJ's credibility determination must be specific enough to permit a reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's subjective complaints. Brown-Hunter, 806 F.3d at 493 (citation and quotation marks omitted). Consequently, an ALJ must specify the testimony he or she finds not credible, provide "clear and convincing reasons" why the particular testimony lacks credibility, and identify the specific evidence which undermines the claimant's subjective complaints. See, e.g., id. at 489, 493-94 (legal error where ALJ failed to identify claimant's testimony found not credible and failed to "link that testimony to the particular parts of the record supporting her

non-credibility determination") (citing Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014)). "General findings are insufficient[.]" Id. at 493 (citations and quotation marks omitted). Nonetheless, if the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to second guess it. See Thomas, 278 F.3d at 959 (citation omitted); see also Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006) (Evaluation of a claimant's credibility and resolution of conflicts in the testimony are solely functions of the Commissioner.) (citation omitted).

### 2. Analysis

Plaintiff contends that a remand or reversal is warranted because the ALJ inadequately evaluated the credibility of her subjective complaints. (Plaintiff's Motion at 6-8). The Court disagrees.

First, the ALJ properly discredited plaintiff's complaints of debilitating symptoms due to plaintiff's apparent failure fully to cooperate with objective medical testing. See, e.g., Thomas, 278 F.3d at 959 (evidence of claimant's "efforts to impede accurate testing of her limitations" supported ALJ's finding that claimant lacked credibility) (citation omitted). For example, as the ALJ noted, in the report of her neurological examination of plaintiff, Dr. Maze noted "poor effort" by plaintiff during some strength testing. (AR 474) (citing Exhibit B3F at 3 [AR 946]). Other progress records noted "poor effort" by plaintiff during motor testing and that plaintiff had a positive "Hoover's sign" (which suggested a psychological, rather than physical, cause of paralysis). (AR 474) (citing Exhibit B16F at 8 [AR 1112]).

Second, the ALJ properly discounted plaintiff's overall credibility based on evidence of plaintiff's apparent lack of candor. See Ghanim, 763 F.3d at 1163 (in assessing credibility, ALJ may consider "testimony by the claimant that appears less than candid"); Tonapetyan, 242 F.3d at 1148 ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such

as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.") (citations omitted); see also Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989) ("[I]f a claimant . . . is found to have been less than candid in other aspects of [her] testimony, that may be properly taken into account in determining whether or not [her] claim of disabling pain should be believed."). For example, as the ALJ noted, plaintiff testified that she had received unemployment benefits "over a year and a half" before the 2012 Hearing, possibly "[s]ometime in 2010." (AR 475, 736, 871). Contrary to plaintiff's claims that she was unable to work due to disabling symptoms, plaintiff acknowledged at the hearing that in order to qualify for such unemployment benefits she was expected "to be ready to work." (AR 475, 736, 871). There is also evidence that plaintiff was "actively looking for work in 2008" (*i.e.*, during the period of alleged disability in issue). (AR 476; AR 758 [plaintiff's testimony that she had "a job interview" in February 2008]; AR 925 [February 13, 2008 treatment record noting that plaintiff had "a second job interview [with] Macy's coming up" and that plaintiff was "weary [sic] of background check"]).

     As the ALJ suggested, there was also strong evidence that plaintiff may not have taken some narcotic medication because she was in pain, but instead because she was dependent on the pain medication. (AR 474). For example, a May 2007 "Telephone Call" note stated that plaintiff's request to have her hydrocodone[4] prescription refilled had been denied because Medicaid said its records showed that plaintiff had already received a total of 100 tablets of hydrocodone "from different doctors and different pharmacy," and that plaintiff was told to schedule an appointment with her physician to request additional hydrocodone. (AR 282). A May 30, 2007 medical follow-up note reflects that at the scheduled appointment

---

[4]"Hydrocodone is [a narcotic] pain medication." Hydrocodone, Drugs.com web site, available at http://www.drugs.com/hydrocodone.html.

plaintiff's primary care physician said that she could "no longer prescribe pain [medication] to [plaintiff]" because Medicaid records showed that plaintiff had already "gotten 60 Vicodin on 4/4, 40 on 4/8, and 45 on 4/23, from different [physicians]."[5]  (AR 474) (citing Exhibit 2F at 25 [AR 274]).  A June 21, 2007 progress note from the same doctor noted that plaintiff had subsequently "brought in her readout of the [medications] she had gotten and she had not been getting too many pain pills as Medicaid had alleged," but also documented that plaintiff was still given a pain contract, and that the doctor also planned to check plaintiff's "urine drug screens."  (AR 474) (citing Exhibit 2F at 23 [AR 272]).  Moreover, on September 4, 2007, plaintiff had requested prescriptions for "zoloft and Vicodin" but her physician declined plaintiff's request because the medications had just recently been refilled.  (AR 474) (citing Exhibit 2F at 21 [AR 270]).  It was reasonable for the ALJ to conclude from the foregoing that plaintiff's "pain complaints [should] be viewed with suspicion."  (AR 474).

      Third, the ALJ properly discredited plaintiff's complaints of disabling symptoms due to inconsistencies in plaintiff's own statements and testimony/conduct.  See Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir.), as amended (1997) (in weighing credibility ALJ may consider "inconsistencies either in [plaintiff's] testimony or between his testimony and his conduct"); see also Fair, 885 F.2d at 604 n.5 (ALJ may reject pain testimony based on contradictions in plaintiff's testimony).  For example, evidence that in May 2007 plaintiff's primary care physician stated that she would no longer prescribe pain medication to plaintiff (AR 274), and that in September 2007 the same physician refused another request from plaintiff for Vicodin (AR 270) directly refutes plaintiff's assertion at the 2010 Hearing that no doctor had ever refused to

---

[5]"Vicodin contains a combination of acetaminophen and hydrocodone."  Vicodin, Drugs.com web site, available at http://www.drugs.com/vicodin.html.

1  prescribe plaintiff Vicodin (AR 48).  Plaintiff also gave conflicting statements
2  about the date on which she considered herself unable to work.  (AR 475-76; AR
3  108, 111 141 [2008 Applications alleging onset date of May 4, 2004]; AR 837,
4  844, 877 [2010 Applications alleging onset date of January 2, 2008]; AR 738
5  [plaintiff's testimony at 2012 Hearing that she had "worked and functioned okay"
6  until "around 2006, 2007 [when] stuff started changing"]).  In addition, at the
7  2010 Hearing plaintiff testified that she did not drive, and had not driven for about
8  three years because she was "scared."  (AR 50-51).  The ALJ reasonably
9  questioned the accuracy of this assertion, however, in light of plaintiff's testimony
10 at the 2012 Hearing which suggested that plaintiff had, in fact, been driving (*i.e.*,
11 plaintiff stated that she had been issued "a speeding ticket") and plaintiff's
12 contention that her condition had gotten progressively worse over time.  (AR 476,
13 758-60).  As the ALJ also noted, there appear to be several inconsistencies
14 between plaintiff's testimony at the 2010 Hearing, and her testimony at the 2013
15 Hearing regarding the period in issue.  (AR 476; compare AR 52-53 [testimony at
16 2010 Hearing that plaintiff knew how to knit and would "go to a knitting group on
17 Sundays" when she could] with AR 516 [testimony at 2013 Hearing that plaintiff
18 had learned to knit only "after" the period at issue because a friend wanted
19 plaintiff to attend her knitting group]; compare AR 49 [plaintiff needs assistance
20 with some "self care"] with AR 513 [plaintiff able to attend to personal
21 "hygiene"]; compare AR 49-50 [unable to cook without help from *boyfriend*,
22 "lives off of string cheese" and eats microwave soup when home alone] with AR
23 514 [would "usually make dinner," sometimes with help from *daughter*].
24 Moreover, contrary to plaintiff's testimony and other statements that she was able
25 to engage in some level of household chores and daily activities during the period
26 in issue, in April 2009 plaintiff told an examining psychiatrist that "[s]he does not
27 do household chores or daily activities."  (AR 418).
28 ///

Fourth, the ALJ properly discounted plaintiff's credibility because the alleged severity of plaintiff's pain and other subjective symptoms was inconsistent with plaintiff's daily activities. See Burrell, 775 F.3d at 1137 ("Inconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination.") (citation omitted). For example, as the ALJ noted, contrary to her allegations of disabling symptoms, plaintiff testified at the 2010 Hearing that she was able to engage in multiple daily activities including cooking (with some assistance), light housekeeping, loading and unloading laundry, grocery shopping with assistance, knitting and craft projects, reading, using a computer to check email and do research, visiting with friends, caring for a cat, and attending a weekly knitting group when she was able. (AR 48-54). The ALJ also observed that, despite her alleged disabling mental limitations, plaintiff had still been "able to follow questioning and give detailed answers to questions at three hearings." (AR 475); see, e.g., Drouin v. Sullivan, 966 F.2d 1255, 1259 (9th Cir. 1992) (upholding credibility rejection where ALJ's observation of claimant at the hearing was one of several legitimate reasons stated). Similarly, as the ALJ also noted, contrary to plaintiff's allegations of significant symptoms of depression, Social Security claims representatives noted that when they met face to face with plaintiff, plaintiff "had no difficulties" and had done "quite well during the 90-minute interview," and that plaintiff had "obviously been to the beauty [salon]" since she "had a big hairdo" and "her makeup and nails were all nicely done." (AR 475) (citing Exhibits 2E at 3 [AR 138], B3E at 3 [AR 888]).

Finally, for the reasons discussed at length in the 2013 Decision (see AR 471-75), the ALJ properly discounted plaintiff's credibility in part because the alleged severity of plaintiff's subjective symptoms was not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully

corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted).  Although plaintiff appears to argue that the medical evidence actually supports her subjective complaints (Plaintiff's Motion at 7-8), the Court will not second guess the ALJ's reasonable interpretation to the contrary, even if such evidence could give rise to inferences more favorable to plaintiff.  See Thomas, 278 F.3d at 959 (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

## V.     CONCLUSION

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  March 17, 2016

                                      /s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE